WILLIAM H. TOWNE, administrator, *vs.* ELBRIDGE WASON.

Suffolk. March 11. — April 6, 1880. ENDICOTT & SOULE, JJ., absent.

It is a good defence to a promissory note, that the plaintiff, although in possession of the note, has no interest in it, and is prosecuting the action, not for the benefit of the person beneficially interested, but against his objection.

CONTRACT on the following promissory note, signed and indorsed by the defendant : " Boston, Aug. 11, 1874. For value received, I promise to pay to my own order thirty-one hundred twenty-five dollars on demand, with interest, this money being a fund belonging to the estate of the late Leonard Chase." Trial in the Superior Court, before *Putnam,* J., who allowed a bill of exceptions in substance as follows :

The plaintiff produced the note declared on, which the defendant admitted that he executed and delivered to the plaintiff's intestate on the day of its date ; and thereupon the plaintiff rested his case. The defendant then offered evidence tending to prove that Leonard Chase, of Milford, New Hampshire, died intestate in 1868, and Gilbert Wadleigh was duly appointed his administrator ; that Chase was a member of the firm of Putnam & Chase, which firm owned certain shares of stock of the Souhegan Manufacturing Company ; that the mills belonging to this company were burned, and, upon recovery of insurance, the treasurer deposited the money in the Souhegan National Bank, of Milford, of which the plaintiff's intestate was president, with the dividend book of the company, and with instructions to the cashier to pay out the money to the stockholders and take receipts therefor ; that Daniel Putnam, as surviving partner, receipted for the amount due the firm of Putnam & Chase, and, taking his share, left with the bank the amount belonging to the estate of Chase ; that the defendant's wife was a daughter of Chase, and one fourth of the money so left belonged to her ; that, a short time after the money was left at the bank, the plaintiff's intestate suggested to the defendant that he should take the money, give his note for it, and thus have it at interest ; that the defendant declined, and suggested that the plaintiff's intestate should take the money and give his note for it, but finally it

was decided that the defendant should take the money and give his note for it; that subsequently the plaintiff's intestate brought the money to Boston and presented the note to the defendant to sign, being of the tenor of the above, except that it stopped at the word " interest;" that the defendant declined signing it in that form, and the plaintiff's intestate added the remaining words, whereupon the defendant received the money and signed and indorsed the note, which the plaintiff's intestate retained in his possession; that the cashier of the bank afterwards saw the note in an envelope marked in the handwriting of the plaintiff's intestate, " Property of heirs of L. Chase," and it was afterwards taken from the bank by the plaintiff's intestate, who afterwards told the administrator of Chase that the defendant had the money represented by the note; that the heirs of Chase desired that the defendant should hold the money for their benefit; that the widow of the plaintiff's intestate saw the note in the possession of her husband in an envelope marked " Belonging to the heirs of late L. Chase;" that Wadleigh, who had not completed the settlement of the estate before the trial, demanded in writing the note of the plaintiff, and forbade the prosecution of the suit; and that all of the heirs of Chase had in writing objected to the suit, and directed the plaintiff before the trial to deliver the note to Wadleigh as administrator.

The plaintiff contended that the note was the property of his intestate; and introduced evidence tending to prove this. The defendant thereupon offered evidence tending to show that R. M. Wallace, who was appointed administrator in the place of the plaintiff, knew of no claim that he had as administrator against the estate of Chase; and that the four children and administrator of Chase knew of no such claim, nor did the widow of the plaintiff's intestate.

The plaintiff objected to all the evidence offered by the defendant; and contended, and asked the judge to rule, that such evidence constituted no defence to the action, and that he could recover. But the judge declined so to rule; and instructed the jury that the plaintiff was *prima facie* entitled to recover; that his possession of the note was *prima facie* evidence of his ownership of it; and that he could recover, unless the defendant satisfied them that the plaintiff had no interest in the note or its

proceeds, and had no claim or unsettled accounts with or against the estate of Chase, and was not in any way beneficially interested in the note, and that the suit was not prosecuted by him for the benefit of the parties who were beneficially interested, but against their objection.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*H. G. Parker*, for the plaintiff.

*H. D. Hyde*, for the defendant.

LORD, J. Upon a careful examination of the points and arguments of the respective counsel, we think the difference between them is not upon any principle of law, but upon the application of the law to the facts of the case. It is agreed that the actual manual possession of a promissory note, payable to bearer, or indorsed in blank, gives to the holder *prima facie* a right to sue upon it; and there does not seem to be any controversy between the parties upon the question whether the lawful possession gives to the party holding it absolutely the right to sue upon it without regard to the holder's title to or interest in the note. Upon the other hand, it is not contended that, if the note is stolen, the thief may maintain an action upon it, although he may have the actual manual custody of it, and *prima facie* the right to sue upon it. In the argument of the cause, the plaintiff contended that simple possession, without regard to title or interest, is sufficient, unless such possession is fraudulent. The defendant contended that possession is insufficient if that possession be *mala fide*. Of course, we understand these propositions to be identical.

In this case, the defendant contended that the plaintiff's intestate had neither title to, interest in, nor lawful possession of, the note in suit; that he never had actual, personal possession; that he happened to be the president of a bank in which the money, the consideration of this note, was deposited for the use of certain heirs; that, although he took the money and exchanged it into this note, made payable to the defendant's order and indorsed by him in blank, yet that he did not take it under any claim of interest in it or personal possession of it, but that he put it immediately into the possession of the bank, indorsing upon the envelope in which it was enclosed the fact that it

belonged to and was "property of heirs of L. Chase;" that, when the note was presented to the defendant for signature, there was nothing written beyond the word "interest;" and that, before signing it, he required this additional phrase to be inserted, "this money being a fund belonging to the estate of the late Leonard Chase;" that the plaintiff's intestate never had, or claimed to have, any title or interest or right of possession to the note; that it was never in any manner a part of his estate, and there was no right in this plaintiff to assume to take it as a part of the assets of that estate; and that his possession of it was fraudulent and *mala fide*. And, if we understand the bill of exceptions aright, this plaintiff has ceased to be the administrator of William B. Towne; the present administrator makes no claim of title to, interest in, or possession of the note; and the administrator of the estate of Leonard Chase, which is in process of settlement, claims it as belonging to that estate, and has demanded it of the plaintiff, as having without right converted it to his own use.

It is true that the plaintiff contended that his intestate had an interest of some kind in the note; and the question whether he had or had not any interest in the note was submitted to the jury upon instructions quite sufficiently favorable to the plaintiff, and that issue was found against him. The only embarrassment we find in the case is in determining whether or not the issue of lawful possession of the note by the plaintiff was presented with sufficient distinctness and carefulness by the presiding judge. Upon a consideration of the full case as reported, and upon the real issues tried, as shown by the bill of exceptions, we are satisfied that the question was necessarily involved in the issues presented under the instructions of the court. It seems apparent that the real issue tried was whether the plaintiff's intestate had any right or interest in the note, or whether he had any "claim or unsettled accounts with or against the estate of said Chase." These facts could be important only upon the question of the plaintiff's rightful possession of the note; and when the judge adds that in addition to those facts the defendant must also prove that the plaintiff "was not in any way beneficially interested in the note, and that the suit was not prosecuted by him for the benefit of the parties who were

beneficially interested, but against their objection," the conclusion seems to be irresistible, that the holding of the note by the plaintiff was by reason of an unlawful and fraudulent withholding it from the true owner, and thereby converting it to his own use, in which case the possession of it under the facts stated could not be lawful.

It is, however, strenuously urged that the Chase heirs are not parties to this suit, have no rights in it, and cannot be affected by any judgment in it. This is true, and is of itself the strongest reason why the defendant should be allowed to make this defence. He has been notified by the true owner that the note has been fraudulently obtained by the plaintiff; that it was a demand note, and subject to all the defences which might exist to it even in the hands of an innocent holder. He is notified that the present holder is a fraudulent holder; that he has no claim upon the note, or the proceeds of it; that the true owner will require of him payment of the note; and that, if he pays it to the fraudulent owner, or permits the fraudulent owner to recover judgment without interposing the defence which the true owner is prepared to furnish him, he will do so in his own wrong. *Exceptions overruled.*