SAMUEL NICHOLS *vs.* SOMERVILLE SAVINGS BANK.

Suffolk. November 9, 1955. — February 1, 1956.

Present: QUA, C.J, RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Bills and Notes,* Holder, Check. *Broker,* Deposit against purchase price.

An exception to the direction of a verdict for the plaintiff in an action by an indorsee against the drawer of a check on which payment was stopped after its endorsement in blank by the payee and delivery to the plaintiff was sustained where evidence would have warranted a jury in finding that the check was issued at the payee's request for use as a deposit on his purchase of a business, that the payee delivered it to the plaintiff as broker and agent for the seller under an arrangement whereby the plaintiff was to hold the check in escrow until the time of passing papers, that the plaintiff violated that arrangement by depositing it in a bank before that time, that the purchase fell through, that the seller, whose consent to the bringing of the action was not shown, was adjudicated to be entitled to nothing in an action by him against the payee as purchaser, and that, if the plaintiff was entitled to any money at all, he was entitled at most to one half the amount of the check.

CONTRACT. Writ in the Superior Court dated December 15, 1953.

The action was tried before *Warner,* J.

*Vincent R. Brogna,* for the defendant.

*Marvin N. Geller,* for the plaintiff.

WILKINS, J. This is an action of contract by the indorsee against the drawer of a check on which payment was stopped. The check, in the amount of $1,000, was dated December 1, 1953, drawn on Somerville National Bank, and made pay-

able to the order of Erminio Ferretti.[1]   There were indorsements in blank by Ferretti and the plaintiff.   The check was issued at Ferretti's request for use as a deposit on the purchase of a restaurant business in Boston from one Stuart.   Material portions of a written contract signed by Stuart and Ferretti and by the plaintiff as a witness were: "I, Charles Stuart, hereby accept ($1,000) one thousand dollars from Erminio Ferretti as a deposit for the sale of my store known as Stuarts Cafeteria . . . .   Said $1,000 to be held in escrow by Samuel Nichols until the time of passing papers. . . . Total Sales Price: $20,000   Balance of $19,000 is to be paid at time of passing papers . . . .   Ferretti is to be given an opportunity to secure a longer lease from the landlord before the time of passing papers. . . .   Papers are to pass on or before Dec. 7, 1953. . . . Nichols is to receive the usual commission as broker in this transaction.   5% $1,000 . . . .   If there are any forfeitures made during the negotiations of this transaction, then the broker, Samuel Nichols is to receive one-half (½) of all such forfeited money."   Ferretti was unable to obtain an extension of the lease without paying a higher rental, and the transaction fell through.

At the conclusion of the evidence the trial judge directed a verdict for the plaintiff for the amount of the check and protest fees with interest.   The defendant excepted.

There was testimony from Ferretti, called as a witness by the defendant, that after the purchase and sale agreement was signed, he indorsed the check, and handed it to Nichols, who told him that it was a deposit and that he (Nichols)

---

[1] The body of the check read:

|  |  |  | "No. 119563 |
| --- | --- | --- | --- |
| Somerville Savings Bank 53–125 |  |  |  |
|  | Somerville, Mass. | December 1, | 1953 |
| Pay to the order of | Erminio Ferretti |  | $1,000.00 |
| Somerville Sav. Bank | $1000 and 00 cts |  |  |
| To the Somerville National Bank 53–126   Somerville, Mass. |  | Ronald Livesey |  |
|  |  | *Asst. Treasurer*" |  |

would hold the check until December 7, when the papers were to be passed. There was evidence that on December 2 Nichols opened an account in a Boston bank with a deposit of the check. The defendant argues that the evidence tends to show a conditional delivery of the check and its negotiation in violation of Nichols's promise to hold it. On the other hand, the plaintiff contends that the case is governed by *Prouty* v. *Roberts*, 6 Cush. 19, and that the defendant cannot raise defences existing between the payee and an indorsee, but is limited to defences raised against the payee only.

It seems unfortunate that the defendant's motion to interplead Ferretti was denied. See G. L. (Ter. Ed.) c. 231, § 40. Favorable action would have given an opportunity to do justice simultaneously among all the parties to the instrument. We were informed at the arguments that an action by Stuart against Ferretti was tried with the case at bar, and a verdict returned for Ferretti. We do not speculate as to what circumstances might entitle Nichols to one half the deposit when his principal, the seller, has been adjudicated to be entitled to nothing.

In *Towne* v. *Wason*, 128 Mass. 517, this court held that it was a good defence to a promissory note that the plaintiff, although in possession of the note, had no interest in it, and was prosecuting the action, not for the persons beneficially interested, but against their objection. In *New England Trust Co.* v. *New York Belting & Packing Co.* 166 Mass. 42, a bank to which notes of the defendant had been pledged by another as collateral security, but which at the time of bringing suit had been paid in full by makers of other notes similarly pledged, was denied the right to sue on the defendant's notes for the benefit of the makers of the other notes who might be entitled to contribution but who did not consent to the bank's bringing suit and were not made parties. Neither case cited *Prouty* v. *Roberts*, which could not have been deemed material. All three cases preceded the enactment of the negotiable instruments law, which, however, does not seem to us to have affected the principles

enunciated in them. Section 59 of the negotiable instruments law to which we are referred, G. L. (Ter. Ed.) c. 107, § 82,[1] is concerned with questions of proof, and the last sentence suggests the possibility that the defendant might set up the right of a third party should it overcome the prima facie case.

On the defendant's evidence, the essence of the present case is that the plaintiff, a wrongdoer who had possession of the check only as agent and under an arrangement which he is violating, can now recover the entire amount, although at most he never could have become entitled to more than one half of the proceeds, and although his principal, whose consent to the bringing of this action is not shown, is not entitled to the other half of the proceeds or in fact to anything. We think that there was a case for the jury.

*Exceptions sustained.*

---

[1] "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."