**In re John E. OLDNER, Debtor.**

**Richard L. RAMSAY, Trustee, Plaintiff,**

**v.**

**SUNMARK CONTRACT STAFFING, INC. or Its Successors in Interest; Express Human Resources, Inc.; Express Personnel Services, Inc., John Oldner and Brenda Oldner, Defendants.**

**Bankruptcy No. 94–42031M.
Adversary No. 96–4205.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Sept. 10, 1998.

---

Gregory Campbell, Little Rock, AR, for Express Personnel Services, Inc., Express Human Resources, Sunmark Contract Staffing, Inc.

Buck C. Gibson, Little Rock, AR, for Richard Ramsay.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On October 26, 1994, John E. Oldner ("Debtor") filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. Richard L. Ramsay was appointed Trustee.

The Trustee commenced this action against Sunmark Contract Staffing, Inc. ("Sunmark"). The Complaint seeks a judgment against Sunmark in the sum of $104,-000.00 [1] for a purported pre-petition transfer that the Trustee alleges was constructively fraudulent pursuant to 11 U.S.C. § 548(a)(2)(A)(B) and Ark.Code Ann. § 4-59-204 and 205. After a trial on the merits, the matter was taken under advisement.

The proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H), and the Court has jurisdiction to enter a final judgment in this case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I.

### FACTS

In June 1994, John Oldner ("Debtor") and his wife, Brenda Oldner, sold a tract of real property located adjacent to Interstate 30 near Little Rock, Arkansas, to Oldner and Associates, Inc. d/b/a Delta Moulding and Bill R. Oldner and Margaret Oldner. The total purchase price was $502,000.00 and net cash proceeds of $128,158.88 were paid to the Debtor and Oldner and Associates, Inc.

The cash proceeds of $128,158.88 were deposited into the Debtor's personal account at Twin City Bank in North Little Rock on June 28, 1994. On June 29, 1994, the Debtor wrote two checks in the sum of $100,000.00

Basil V. Hicks, N. Little Rock, AR, for Brenda Oldner.

David Jacobs, Little Rock, AR, for John Oldner.

---

1. The actual amount of the transfer was $104,-674.67.

and $14,000.00 respectively on his personal account payable to Arkansas Business Association ("ABA"), a closely held corporation owned by the Debtor. The transfers from the Debtor to ABA cleared the Debtor's account June 29 and 30. The Debtor testified that both checks represented loans to ABA, and the check for $100,000.00 contained a notation "loan" on its face. On June 29, 1994, ABA transferred $104,674.67 to Sunmark in payment of a debt for payroll services performed by Sunmark for ABA.[2]

Thereafter, on October 26, 1994, the Debtor filed his bankruptcy petition. The Debtor testified that at the time of the transfers in June 1994, he was "probably" solvent, but between that time and the date the petition was filed he became insolvent. On the petition date he listed liabilities of $3.2 million and assets of $2.06 million. He scheduled $399,391.80 as an account receivable from ABA and testified that was the total amount he had transferred to the company with the expectation that he would recoup his investment over the long term.

## II

### THE ARGUMENT

The Trustee argues that the transfers from the Debtor to ABA that cleared the Debtor's account on June 29 and June 30, 1994, should be ignored and the transfer from ABA to Sunmark that cleared ABA's account on July 1, 1994, should be construed as a transfer by the Debtor for purposes of 11 U.S.C. § 548 and Ark.Code Ann. § 4–59–204. When the transfer is viewed in this fashion, the Trustee argues, the Debtor did not receive reasonably equivalent value for the transfer, and the transfer may be avoided as constructively fraudulent because the services performed by Sunmark were for the benefit of ABA and not the Debtor. The Trustee does not disagree that Sunmark performed payroll services for ABA worth $104,-674.67.

Further, although the Trustee's Complaint prays for a money judgment against Sunmark for the amount of the alleged fraudulent transfer in the sum of $104,674.07, the Trustee argued at trial that he only seeks a determination that the transfer to Sunmark was a transfer by the Debtor and that it was an exchange for less than reasonably equivalent value while the Debtor was insolvent.

Sunmark disputes all of the Trustee's allegations and raises several affirmative defenses. However, it is not necessary to discuss the various defenses because the Trustee has failed to establish that a fraudulent conveyance occurred.

## III

### DISCUSSION

■ Among the elements the Trustee must prove to prevail on his constructive fraud claim is that the Debtor transferred property for which he did not receive reasonably equivalent value. 11 U.S.C. § 548(a)(2)(A) & (B) (1994); Ark.Code Ann. § 4–59–204(a)(2)(i) & (ii) (Michie 1996); Ark. Code Ann. § 4–59–205(a) (Michie 1996).

■ Here the Trustee does not attack the first transfer; that is, the loan from the Debtor to ABA, as constructively or actually fraudulent. A loan establishes a debtor-creditor relationship in which the debtor owes the creditor a debt or obligation to repay, and the creditor retains a chose in action or right of action to recover on the debt or money owed. *Gregory v. Colvin*, 235 Ark. 1007, 1008, 363 S.W.2d 539, 540 (1963); *Smead & Powell v. Chandler & Co.*, 71 Ark. 505, 76 S.W. 1066, 1068 (1903). The undisputed evidence is that the transfer from the Debtor to ABA was a loan from the sole shareholder to his closely held corporation, generally an unremarkable event.

The Trustee argues that the second transfer, that is, the transfer from ABA to Sunmark, was constructively fraudulent. To establish that the transfer was not made for

2. The check from ABA to Sunmark was dated June 28, 1994, the day before ABA actually received the money from the Debtor. The check payable to Sunmark cleared ABA's account July 1, 1994.

The contract for the payroll services was between Sunmark and John Oldner Enterprises, Inc. John Oldner Enterprises, Inc. is a holding company owned by the Debtor, but its relationship to ABA is not shown by the record.

reasonably equivalent value, the Trustee relies in part on 11 U.S.C. § 550, which provides:

 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

 (2) any immediate or mediate transferee of such initial transferee.

In a tortured construction of section 550, the Trustee asserts that the statute permits a disregard of the corporate fiction of ABA for purposes of determining who is the transferor under section 548, but not for purposes of considering who received the reasonably equivalent value. Apparently the Trustee arrives at his conclusion because of case law limiting the effect of 11 U.S.C. § 550.

Courts have observed that a literal application of section 550(a) would occasionally countenance recovery against persons innocent of wrongdoing, such as agents acting in good faith. *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1201 (11th Cir.1988); *Bumgardner v. Ross (In re Ste. Jan–Marie, Inc.)*, 151 B.R. 984, 988 (Bankr.S.D.Fla.1993) (citing *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (Bankr. S.D.N.Y.1983)). Therefore, courts limit the circumstances under which recovery from the initial transferee is permitted pursuant to section 550(a).

 One such court-imposed limit is that an initial transferee is only liable under section 550 if the transferee has dominion and control over the property received. *Malloy v. Citizens Bank (In re First Security Mortgage Co.)*, 33 F.3d 42, 44 (10th Cir. 1994); *Security First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 140–41 (5th Cir.1993); *Ragsdale v. South Fulton Machine Works, Inc. (In re Whiteacre Sunbelt, Inc.)*, 200 B.R. 422, 425 (Bankr.N.D.Ga.1996)

(initial transferee must be able to put the transferred money to his own purposes, such as paying a debt). The Eighth Circuit has adopted the dominion and control standard. *Luker v. Reeves (In re Reeves)*, 65 F.3d 670, 676 (8th Cir.1995). A test of dominion and control over the transfer of money is whether "an entity ... is in essence free to invest the whole [amount] in lottery tickets and uranium stocks." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir.1988).

However, contrary to the Trustee's argument, cases construing section 550 do not hold that the initial transfer did not occur; the cases merely hold that recovery against the initial transferee would be inappropriate under certain circumstances. *Luker v. Reeves (In re Reeves)* 65 F.3d 670, 676 (8th Cir.1995). Section 550 does not provide a basis to set aside the corporate fiction of a closely held corporation, and no court has held that it does. The transfer *to* ABA was a loan, and the transfer *from* ABA was in payment of a debt for valuable services rendered to ABA. No constructively fraudulent transfer occurred under the facts of this case.

Therefore, for the reasons stated the Trustee's Complaint is dismissed.

 IT IS SO ORDERED.