In re Rae Orene BAUER, Cyril
J. Bauer, Debtors.

Michael J. Iannacone, Trustee,
Plaintiff,

v.

Internal Revenue Service, an agency of
the United States of America,
Defendant.

Bankruptcy No. 02–30738.
Adversary No. 04–3099.

United States Bankruptcy Court,
D. Minnesota.

Jan. 3, 2005.

Robert J. Hoglund, Roseville, MN, for Debtors.

## ORDER GRANTING SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the defendant's motion for summary judg-

ment, and on the plaintiff's response thereto which essentially amounted to a cross motion for summary judgment. Michael J. Iannacone appeared on behalf of himself as the Chapter 7 Trustee of the bankruptcy estate of the debtors, and Stephanie M. Page appeared on behalf of the defendant, the Internal Revenue Service (IRS). At the conclusion of the hearing, the Court allowed the IRS ten days within which to file a supplemental brief in reply to the Trustee's response. Thereafter, the Court took the matter under advisement. The Court now being fully advised in the matter makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. BACKGROUND

The relevant facts in this case are largely not in dispute. Debtors Rae and Cyril Bauer filed a voluntary bankruptcy petition under Chapter 7 on February 20, 2002. At the time of filing, Cyril J. Bauer (Bauer) was the owner of Individual Retirement Account (IRA) account # KI11036745 established with Kemper Insurance Company. Bauer claimed the IRA exempt; however this Court denied the exemption on October 3, 2003. Between November 8, 2002 and June 20, 2003, Bauer made withdrawals from the IRA totaling $176,232.28. Between May 19, 2003 and June 20, 2003, Bauer also directed Kemper to withhold from the IRA and deposit with the IRS for taxes a total of $33,440 (the transfer).[1]

The Trustee argues that the transfer of the $33,440 to the IRS was a transfer of property of the estate after commencement of the case, not authorized under Title 11 or by any Order of the Court, and recoverable pursuant to 11 U.S.C. § 550 from the IRS as the initial transferee. The IRS, on the other hand, argues that it is not the initial transferee but a subsequent transferee, and that therefore the provisions of 11 U.S.C. § 550(b)(1) apply. The IRS contends it is protected by § 550(b)(1) because the IRS accepted the transfer for value, in good faith, and without knowledge that the transfer was voidable.

## II. DISCUSSION

*Summary Judgment Standard*

"Under Federal Rule of Civil Procedure 56(c), summary judgment is to be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *See Sheets v. Butera*, 389 F.3d 772, 776 (8th Cir.2004), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "This rule 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

1. Bauer, therefore, parted with the relevant funds in 2003 on the dates he directed Kemper to withhold those funds for payment to the IRS. When the funds were actually deposited with the IRS is not exactly known because the IRS does not identify payments received until it matches each payment with a corresponding Form 1099–R. The IRS acknowledges receipt from Kemper of the 1099–R for Bauer's withholding from his 2003 IRA distributions on March 1, 2004. This information was processed and posted to Bauer's IRS file on June 15, 2004. The IRS was a defendant in this adversary proceeding on March 26, 2004. The funds were treated by the IRS as received by the IRS by December 31, 2003 and credited with payment as of December 31, 2003, regardless of when actually posted to Bauer's IRS file.

and on which that party will bear the burden of proof at trial.'" *Id.*

*11 U.S.C. § 550*

Section 550 of the Code provides, in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

    (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

    (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

    (2) any immediate or mediate good faith transferee of such transferee.

*See* 11 U.S.C. § 550.

■ "As a general rule, § 550(a) imposes liability on all recipients in a chain of transfers of fraudulently-conveyed property." *See Leonard v. Mountainwest Financial Corp. d/b/a Prime Option Services (In re Whaley),* 229 B.R. 767, 773 (Bankr. D.Minn.1999), citing *In re Sherman,* 67 F.3d 1348, 1356 (8th Cir.1995). "The difference in status between initial transferee and mediate/immediate transferee, however, qualifies this." *Whaley,* 229 B.R. at 773. "An initial transferee from the debtor is strictly liable." *Whaley,* 229 B.R. at 773, citing *In re Bullion Reserve of North Am.,* 922 F.2d 544, 547 (9th Cir.1991);

*Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 895 (7th Cir.1988); *In re Moskowitz,* 85 B.R. 8, 10 (E.D.N.Y.1988); *In re Blinder, Robinson & Co., Inc.,* 162 B.R. 555, 562 (D.Colo. 1994); *In re Dominion Corp.,* 199 B.R. 410, 413 (9th Cir. BAP 1996).

"Mediate or immediate transferees in the chain out from the initial transferee may avoid liability by proving something akin to bona fide purchaser status." *Whaley,* 229 B.R. at 773, citing *In re Coutee,* 984 F.2d 138, 140 n. 2 (5th Cir.1993); *In re Baker & Getty Financial Services, Inc.,* 974 F.2d 712, 722 (6th Cir.1992); *In re C–L Cartage Co., Inc.,* 899 F.2d at 1495; *In re Chase & Sanborn Corp.,* 848 F.2d 1196, 1201 (11th Cir.1988); *Bonded Financial Services,* 838 F.2d at 896 n. 3; *In re Presidential Corp.,* 180 B.R. 233, 236 (9th Cir. BAP 1995); *In re Circuit Alliance, Inc.,* 228 B.R. 225, 231–32 (Bankr.D.Minn. 1998). However, "the initial transferee of an avoided transfer is strictly liable to the estate, whether it colluded with the debtor or was an innocent and unwitting recipient." *Circuit Alliance,* 228 B.R. at 232 (citations omitted).

■ The question before the Court is whether the IRS is the initial transferee of the $33,440 transfer from Bauer's IRA at Kemper. "[T]o be an initial transferee, a party must have dominion and control over the transferred funds." *See Luker v. Reeves (In re Reeves),* 65 F.3d 670, 676 (8th Cir.1995), citing *In re First Sec. Mtg. Co.,* 33 F.3d 42 (10th Cir.1994); *In re Coutee,* 984 F.2d 138, 140–41 (5th Cir. 1993). "It is not the simple possession of funds, coupled with a one-time act of directing them on to a further transferee, that makes out the 'dominion and control' of *Bonded Financial Services."* *Circuit Alliance,* 228 B.R. at 232. "Rather, it is an unfettered legal right to use the funds for the possessor's own purposes and ben-

efit." *Id.* (citations omitted). "Thus, an entity that is in possession of transferred funds as a 'mere conduit' between other parties in a transactional chain is not a 'transferee' within the scope of § 550(a)." *Id.* at 232–33 (citations omitted).

The *Reeves* case is not factually analogous, but it does provide insight into the applicable dominion and control standard in the Eighth Circuit. In *Reeves,* the debtor transferred funds to a corporate account he had fraudulently opened in the name of a legitimate corporation, RFI, unbeknownst to any other director, shareholder or officer of RFI. *Reeves,* 65 F.3d at 675. The debtor then disbursed the funds from the hidden account primarily to another entity he controlled, RTI. *Id.* The bankruptcy trustee sought to recover the transfer from RFI as the initial transferee. *Id.* at 676. The Eighth Circuit Court of Appeals reversed and remanded for proper application of the dominion and control standard, stating that it was not discernable from the record that "RFI, as opposed to [the debtor], ever had dominion and control over the $65,000." *Id.* "On this record," the Court explained, "we cannot conclude as a matter of law that [the debtor's] fraudulent use of RFI as a conduit for [the funds transferred] made the corporation the initial transferee of the $65,000." *Id.*

There is little dispute that once the funds were transferred to the IRS that the IRS had, and continues to assert, dominion and control over the transferred funds. The IRS, however, views itself as an immediate or mediate transferee under § 550(a)(2), entitled to protection under § 550(b)(1). The IRS contends that Bauer was the initial transferee, in effect receiving the distribution out of his IRA from

Kemper and then redepositing a portion of it back to Kemper to be withheld and paid to the IRS. Interestingly, the Trustee, argues that if the transaction had actually occurred like that, with funds actually being disbursed to Bauer, and Bauer subsequently endorsing or otherwise actually remitting the funds back to Kemper for payment to the IRS, then Bauer would in fact be the initial transferee. The Court finds both of these contentions to be erroneous.

### Bauer as the Initial Transferee

■ "There is a bit of caselaw authority for affixing 'initial transferee' status to the principal of a corporate debtor who has diverted the company's assets to a direct payment of the principal's own debts, or the debts of other entities that the principal controls." *See Leonard v. First Commercial Mortgage Company (In re Circuit Alliance, Inc.),* 228 B.R. 225, 231 (Bankr. D.Minn.1998), citing *In re Richmond Produce Co., Inc.,* 195 B.R. 455 (N.D.Cal. 1996); *In re Auto–Pak, Inc.,* 73 B.R. 52 (D.D.C.1987); *In re Concord Senior Housing Fdn.,* 94 B.R. 180 (Bankr.C.D.Cal. 1988); Cf. *In re Food & Fibre Protection, Ltd.,* 168 B.R. 408 (Bkrtcy.D.Ariz.1994); *In re Jorges Carpet Mills, Inc.,* 50 B.R. 84 (Bankr.E.D.Tenn.1985). "These decisions seem to find their rationale in a reversed application of the 'dominion and control' theory: in making such a payment, the converting principal uses or misuses his office's control over the corporation's assets; he takes personal benefit from that use or misuse; and hence he must have been a 'transferee' of something, *before all other parties in the chain of actual receipt." Circuit Alliance, Inc.,* 228 B.R. at 231 (emphasis added).[2] The cases relied

---

**2.** *See In re Circuit Alliance, Inc.,* 228 B.R. at 231 citing *In re Richmond Produce Co., Inc.,* 195 B.R. at 462 (emphasizing principal's

"complete dominion and control over" debtor-corporation of which he was sole shareholder, in terming him "initial transferee" of

upon by the IRS here are examples of reverse application of the dominion and control standard.

"The problems with this line of cases, however, are several." *Circuit Alliance, Inc.*, 228 B.R. at 231. As Judge Kishel explained, "The decisions never really address the conundrum of how a party outside the formal chain of title and possession can be deemed the recipient of a 'transfer,' given the requirement of 11 U.S.C. § 101(54) that 'property or ... an interest in property' pass to the transferee." *Id.* "They also ignore the several well-reasoned decisions holding that the concepts of 'entity for whose benefit' and 'transferee' are mutually exclusive, principally *Bonded Fin'l Serv.*, 838 F.2d at 895–896." *Id.*, (citations omitted). "Given that mutual exclusivity, it is difficult to conceive how a participating entity outside the chain could be anything under the statutory scheme other than an 'entity for whose benefit.'" *Id.* "For the reasons just cited, and for their failure to articulate a rationale on the plain language of the statute, these decisions are not good authority." *Id.*

In this case, Bauer, "[w]hether he was an 'entity for whose benefit' or not, [ ] was never a recipient or repository of the funds." *Circuit Alliance*, 228 B.R. at 235. He did not receive the $33,440 transfer either actually or in essence from Kemper. In fact, Bauer directed the withholding payment from Kemper to the IRS, as he also directed the withdrawals to himself.

funds paid from debtor's account to bank at which debtor maintained business accounts, for issuance of cashier's check that was then tendered to creditor of principal); *In re Auto–Pak, Inc.*, 73 B.R. at 54 (debtor's principal "essentially took control of the funds" when he took debtors' check made payable to affiliated company's creditor to bank, traded it for cashier's check made payable to creditor, and then tendered that to creditor; this made

He was the authoritative source of the transfer, but "he was never a transferee, and certainly was not an initial one." *Id.*

*Intermediate Parties to Transfer*

"Generally, 'mere conduits' hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title, or interest." *Circuit Alliance*, 228 B.R. at 233–34 (citations omitted). "While not always articulated as such, the 'mere conduit' exception is supported by basic fairness as well as public policy considerations: regardless of the lack of qualifying language in § 550(a), the broadest application of the concept of 'transferee' under it would inappropriately subject mere stakeholders, bailees, and intermediaries to liability, where they had never stood to gain personally from the funds momentarily in their possession." *Id.*, citing *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56 (2d Cir.1997); *In re Granada, Inc.*, 156 B.R. 303, 306 (D.Utah 1990); *In re Moskowitz*, 85 B.R. at 11.

"When an avoidable transfer is made through a mere innocent conduit that receives no beneficial interest from the transfer, the clear weight of authority embraces the essential conclusions reached in *Bonded Financial* and *Nordberg* and holds that such a conduit is not an 'initial transferee' for purposes of recovery under § 550(a)(1)." *See Miller v. T.C. Sheet*

him, or affiliated company, an immediate transferee); *In re Concord Senior Housing Fdn.*, 94 B.R. at 183 (managing agent of debtor "exercised sufficient control over ..." [certificate of deposit funded with debtor's revenues but held on account of his management company] to make him a transferee, when he pledged certificate of deposit to secure his personal debts).

Metal Control Board Trust Fund (In re Curran V. Nielsen Co., Inc.) 1995 WL 711268, *4 (Bankr.D.Minn.1995).[3] See also, Reeves, 65 F.3d at 676, in which the Court commented, "to the extent that RFI was a mere conduit for an avoidable transfer of the settlement proceeds to RTI, that corporation becomes the initial transferee for purposes of § 550(a)(2), an issue the bankruptcy court may take up on remand."

In this case, Kemper is clearly a conduit as defined by the prevalent and consistent caselaw on the subject. Kemper never had possession of Bauer's IRA funds in a manner equivalent to dominion and control as contemplated by the standard in the initial transferee context of § 550. Kemper managed Bauer's IRA funds as a fiduciary, in trust for the benefit of Bauer, under terms surely set forth in a

3. In re Curran V. Nielsen Co., Inc., 1995 WL 711268; citing Luker v. Reeves (In re Reeves), 65 F.3d 670, 675–76 (8th Cir.1995) (embracing the dominion and control test for determining whether an entity is an initial transferee under § 550(a)); Malloy v. Citizens Bank (In re First Sec. Mortgage Co.), 33 F.3d 42, 43–44 (10th Cir.1994); Security First Nat'l Bank v. Brunson (In re Coutee), 984 F.2d 138, 140–41 (5th Cir.1993) (law firm that deposited debtor's funds into trust account was not an initial transferee since the funds were being held in a merely fiduciary capacity for the debtors); First Nat'l Bank v. Rafoth (In re Baker & Getty Fin. Services, Inc.), 974 F.2d 712, 722 (6th Cir.1992); Danning v. Miller (In re Bullion Reserve), 922 F.2d 544, 548–49 (9th Cir.1991); Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.), 904 F.2d 588, 597–600 (11th Cir.1990) (opining that when a bank receives money to pay off a debt it is owed, it is not a mere conduit; however, when a bank receives the "money for the sole purpose of depositing it into a customer's account, on the other hand, the bank never has actual control over the funds and is not a section 550 initial transferee."); Lowry v. Security Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.), 892 F.2d 26, 28 (4th Cir. 1989) (ruling that "a party cannot be an initial transferee if [it] is a mere conduit for the party who had a direct business relationship with the debtor."); Huffman v. Commerce Sec. Corp. (In re Harbour), 845 F.2d 1254, 1256 (4th Cir.1988) (opining that a literal interpretation of § 550(a)(1) is too "narrow to fit all circumstances"); Commercial Recovery Inc. v. Mill Street, Inc. (In re Mill Street, Inc.), 96 B.R. 268, 269 (9th Cir. BAP 1989) (indicating that the test to determine whether an entity is a mere conduit, rather than an initial transferee, is "whether the transfer was made 'solely for the purpose of benefiting the eventual transferee'"); Kaiser Steel Resources, Inc. v. Jacobs (In re Kaiser Steel Corp.), 110

B.R. 514, 519 (D.Colo.) (noting that courts have excepted from the scope of the definition of an initial transferee those parties which act as mere custodians or serve as intermediate clearinghouses between the debtor and the creditor who has the beneficial interest in the item transferred), aff'd, 913 F.2d 846 (10th Cir.1990); O'Neal v. Southwest Missouri Bank (In re Broadview Lumber Co., Inc.), 168 B.R. 941, 963 (Bankr.W.D.Mo.1994); Official Comm. of Unsecured Creditors v. United States Dept. of Labor (In re Dairy Stores, Inc.), 148 B.R. 6, 9–10 (Bankr.D.N.J.1992) (finding that the Department of Labor acted merely as an agent for the employees and an administrator of the payments; it enjoyed no benefit from the receipt of the monies collected and enforced their rights under the Fair Labor Standards Act solely for ministerial purposes); Davis v. Davenport (In re Davenport), 147 B.R. 172, 185 (Bankr.E.D.Mo.1992); Belford v. Breck (Medical Cost Management, Inc.), 115 B.R. 406, 408 (Bankr.D.Conn.1990) (indicating that "[a]n initial transferee must have the right to control the transferred funds, rather than merely be a conduit for the entity that has that right."); Machinery & Steel Serv., Inc. v. Dalton (In re Machinery & Steel Serv., Inc.), 112 B.R. 478, 480 (Bankr.D.Mass.1990) (finding union that received checks from employer to be passed on to employee pension and welfare funds was not an initial transferee); Kupetz v. United States (In re Williams), 104 B.R. 296, 299 (Bankr.C.D.Cal.1989) (concluding that "an escrow company is merely a conduit through which funds flow from a purchaser to a seller"). Accord 4 Collier on Bankruptcy ¶ 550.02, at 550–12 (Lawrence P. King et al. eds., 15th ed.1995). But see Mixon v. Mid–Continent Sys., Inc. (In re Big Three Transp., Inc.), 41 B.R. 16, 20–21 (Bankr. W.D.Ark.1983) (ruling that the plain and unambiguous language of § 550(a)(1) should be read literally).

typical IRA agreement between Bauer and Kemper. Regardless of the controlling bankruptcy law that rendered the IRA property of the bankruptcy estate, as between Bauer and Kemper, Bauer had ultimate authority over the funds in the IRA. Bauer directed the transfer from the IRA to the IRS merely through Kemper. As such, Kemper drops out of the initial transferee equation.

### The IRS is the Initial Transferee

"Applying the 'mere conduit' exception takes the holder of that status out of the chain." *Circuit Alliance*, 228 B.R. at 235, citing *Bonded Fin'l Serv.*, 838 F.2d at 893 (the conduit-intermediary "may be disregarded" for § 550(a) analysis); *In re Moskowitz*, 85 B.R. at 11. In the case at bar, disregarding Kemper for purposes of the § 550 analysis "leads ineluctably to vesting the Defendant with the status of initial transferee; by the simple sequence of the remaining chain, it is deemed to have taken the transfer from the Debtor." *Circuit Alliance*, 228 B.R. at 235.

One of the cases relied upon by the IRS, *In re Kenitra*, is consistent with the conclusion here to the extent that the court there found that the source of a withholding payment is the individual who received the original payment from which a portion of the funds was withheld for payment of taxes on the original payment. *See Robert K. Morrow, Inc. v. Hay et al (In re Kenitra, Inc.)*, 53 B.R. 150, 151 (Bankr.D.Or. 1985). This Court respectfully disagrees, however, with the analysis that "it is as if the entire $40,000 were paid to [the debtor's employee] who then paid $14,402.20 back to the debtor which then paid that sum to the IRS," with the result that "[w]hen viewed from this perspective, the IRS becomes a 'mediate' or subsequent transferee under 11 U.S.C. § 550(a)(2)." *Id.* The employer administering withholding from compensation paid to its employees lacks the sort of dominion and control over those funds required for initial transferee status under § 550, and falls squarely within the well established mere conduit exception.

Because the IRS is liable to the Trustee pursuant to § 550(a)(1) as the initial transferee of the voidable $33,440 transfer of non-exempt IRA funds from Bauer, the Court need not address the arguments raised by the parties under § 550(b)(1).

### III. DISPOSITION

IT IS HEREBY ORDERED:

1. The IRS' motion for summary judgment is DENIED;
2. The Trustee's motion for summary judgment is GRANTED;
3. Pursuant to 11 U.S.C. § 550(a)(1), the Plaintiff shall recover from the Defendant the sum of $33,440.00.