## Louis Falcigno Enterprises, Inc. *vs.* Massachusetts Bank and Trust Co.

Plymouth. April 21, 1982. — June 28, 1982.

Present: Greaney, Cutter, [ Dreben, JJ.

*Uniform Commercial Code,* Cashier's check, Defenses, Bank. *Negotiable Instruments,* Cashier's check, Defenses.

A bank which had issued a cashier's check on which payment was subsequently stopped at the request of its customer could not, in the circumstances, when sued by the payee, assert as defenses claims of its customer arising out of the underlying transaction for which the cashier's check was delivered by the bank's customer to the payee. [93-96]

Civil action commenced in the Brockton Division of the District Court Department on November 7, 1980.

On removal to the Superior Court Department the case was heard by *Byron,* J., on a motion for summary judgment.

*Carolyn M. Conway* for the defendant.

*Alan L. Lewis* for the plaintiff.

Dreben, J. The question before us is whether a bank which has issued a treasurer's or cashier's check may, when sued by the payee, assert as defenses claims of its customer arising out of the underlying transaction for which the treasurer's check was delivered by the bank's customer to the payee. We hold that in the circumstances of this case the bank may not assert such defenses and that summary judgment was properly entered for the plaintiff, the payee of the cashier's check.

An affidavit of the bank's customer filed by the defendant indicates that the dispute between the customer and the plaintiff relates to a license given by the plaintiff to the

customer to exhibit a championship boxing match on closed circuit television. Prior to the telecast, the plaintiff demanded payment in the form of a bank check for expenses amounting to $47,305. When the customer claimed the expenses were not then due, the plaintiff indicated that it would not transmit the necessary signals for the telecast unless the bank check was delivered. As a result of the plaintiff's threat, and because it had already incurred substantial expenses, the customer delivered the check as demanded. After the telecast, the customer prevailed upon the bank to dishonor the check.

The customer's affidavit also alleges that, despite its repeated protests, the plaintiff refused to make adjustments. Because of the plaintiff's "misrepresentations," the customer sustained losses in excess of $50,000. The alleged misrepresentations related to receipts of prior matches, to the availability of certain facilities, and to the number of spectators who would buy tickets on the evening of the match.

The defendant also filed an affidavit of its president appending a letter of the customer, the body of which is set forth in the margin.[1] The affidavit refers to the letter as a "written indemnification agreement."

These affidavits establish that, unlike the situation in *Travi Constr. Corp.* v. *First Bristol County Natl. Bank,* 10 Mass. App. Ct. 32, 36 (1980), the defense asserted is not that of the bank but is a defense of the customer. Moreover, the defense relates to the underlying transaction and is not a "claim . . . to the instrument." See G. L. c. 106, § 3-306 (*d*), and § 3-603(1), both inserted by St. 1957, c. 765, § 1.

---

[1] "Please stop payment on your treasurers check No. 032615 in the amount of $47,305.00 to Lou Falcigno Enterprises, Inc., issued Wednesday, October 1, 1980.

"The reason for this stop payment is that the goods and services ordered and agreed upon were *not* delivered as agreed upon.

"I agree to hold this bank harmless and also agree to indemnify this bank against any loss arising from the stop payment."

No cases have been cited to us and we have found none which allow this kind of contract defense of its customer to be asserted by a bank where the bank is the sole obligor on the instrument. See G. L. c. 106, § 3-802(1)(a). Compare *Leo Syntax Auto Sales, Inc.* v. *Peoples Bank & Sav. Co.*, 6 Ohio Misc. 226 (Ct. C.P. 1965), the only case found allowing the bank to raise such defenses; in that case the purchaser as endorser of the check was also liable on the instrument. To the contrary, the authorities seem in accord in holding that a bank may not raise such a contract defense on a cashier's check. They reach this result, however, by different routes, as the Uniform Commercial Code (Code) does not deal specifically with defenses to cashier's checks. See generally Lawrence, Making Cashier's Checks and Other Bank Checks Cost-Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code, 64 Minn. L. Rev. 275 (1980).

Some cases hold flatly that a cashier's check may not be dishonored. E.g., *State ex rel. Chan Siew Lai* v. *Powell*, 536 S.W.2d 14, 16 (Mo. 1976); *Abilities, Inc.* v. *Citibank, N.A.*, 87 App. Div. 2d 831 (N.Y. 1982); see also *Moon Over the Mountain, Ltd.* v. *Marine Midland Bank*, 87 Misc. 2d 918 (N.Y. Civ. Ct. 1976); *National Newark & Essex Bank* v. *Giordano*, 111 N.J. Super. 347, 351-352 (1970). One rationale given for these cases is that the check is drawn by the bank on itself and is accepted by the mere act of issuance. See G. L. c. 106, § 3-413(1).

Other cases treat cashier's checks like ordinary negotiable instruments under the Code. They point out that while some defenses of a third party may be available, both under the Code and prior law,[2] only claims to the instrument and not defenses to the underlying transaction may be asserted by the bank. This is true even where the third party defends the lawsuit. See G. L. c. 106, § 3-306(d); *Fulton Natl.*

---

[2] *Prouty* v. *Roberts*, 6 Cush. 19, 20 (1850). *Nichols* v. *Somerville Sav. Bank*, 333 Mass. 488, 490-491 (1956). Sutherland, Article Three: Commercial Paper, 1957 Ann. Survey Mass. Law 24, 29-30.

*Bank* v. *Delco Corp.*, 128 Ga. App. 16, 19 (1973) (bank draft). Compare *Deones* v. *Zeches*, 212 Minn. 260, 264 (1942) (claim that title to the instrument had not passed). An extensive discussion of jus tertii, the use of the rights of third persons as a defense, is contained in Note, Blocking Payment on a Certified, Cashier's, or Bank Check, 73 Mich. L. Rev. 424, 428-435, 436-439 (1974). See also White & Summers, Uniform Commercial Code 682 & n.113 (2d ed. 1980); Note, Personal Money Orders and Teller's Checks: Mavericks Under the UCC, 67 Colum. L. Rev. 524, 547-548 (1967); Benson, Stop Payment of Cashier's Checks and Bank Drafts Under the Uniform Commercial Code, 2 Ohio N.U.L. Rev. 445, 460 (1975); Wallach, Negotiable Instruments: The Bank Customer's Ability to Prevent Payment on Various Forms of Checks, 11 Ind. L. Rev. 579, 592 (1978); Lawrence, *supra* at 304-316. Some authorities would apply the full scope of G. L. c. 106, § 3-306(*d*), to cashier's checks and would, therefore, permit as a defense claims on account of the underlying transaction which are serious enough to give rise to the right of rescission. See Comment 5 to § 3-306 of the Uniform Commercial Code, 2 U.L.A. (Master ed. 1977); *First Natl. Bank* v. *Associates Inv. Co.*, 140 Ind. App. 394, 398 (1966); Fox, Stopping Payment on a Cashier's Check, 19 B.C.L. Rev. 683, 692 (1978). Contrast Lawrence, *supra* at 316-320.[3]

We think it plain that the policy in favor of reliability of bank checks requires a rule that the bank be precluded from raising the contract defenses claimed here on behalf of its customer. See *Travi Constr. Corp.* v. *First Bristol County Natl. Bank*, 10 Mass. App. Ct. at 36; *State ex rel. Chan Siew*

---

[3] Another rule for cashier's checks has been suggested by one commentator, namely, "the finality of payment" rule of the Code. G. L. c. 106, § 3-418. See Brady, Bank Checks § 20.12, at 20-30 through 20-31 (5th ed. 1979), cited in *Travi Constr. Corp.* v. *First Bristol County Natl. Bank*, 10 Mass. App. Ct. at 34-35 & n.3. Cf. *Rockland Trust Co.* v. *South Shore Natl. Bank*, 366 Mass. 74, 78 (1974). See also Lawrence, *supra* at 288. We note that the uncontroverted allegation in the plaintiff's affidavit as to its expenditures based on the issuance of the bank check brings the plaintiff within the final payment rule suggested by Brady.

*Lai* v. *Powell,* 536 S.W.2d at 16; *National Newark & Essex Bank* v. *Giordano,* 111 N.J. Super. at 351-352. Thus, even if we were to accept the defendant's invitation and reject an absolute rule against dishonor of cashier's checks where claims of a remitter are involved, we would, in any event,. not permit defenses broader than those permitted under G. L. c. 106, § 3-306(*d*).[4]  Since the customer's claims do not fall within that section or § 3-603, the plaintiff must prevail.[5]

*Judgment affirmed.*

---

[4] The defendant concedes that if the plaintiff is a holder in due course, the bank may not assert the customer's contract defenses.  It argues, however, that there is a question of material fact as to whether the plaintiff is a holder in due course.  We need not consider that question since we hold that even if the plaintiff is not a holder in due course so that c. 106, § 3-306, and not c. 106, § 3-305, is applicable, the defenses claimed do not fall within § 3-306(*d*).  Different views have been expressed as to whether a payee who receives a bank check from a remitter who claims failure of consideration is a holder in due course.  Compare *Fulton Natl. Bank* v. *Delco Corp.,* 128 Ga. App. at 18, and Kock, Commercial Law, 25 Mercer L. Rev. 49, 60 (1974) (not a holder in due course) with Note, 67 Colum. L. Rev. at 547, Benson, *supra* at 459 & 460, and 6D U.C.C. Rep.-Dig. (MB) § 3-306, at 2-886.24 (1981) (suggesting payee may in such a case be a holder in due course).

[5] In those cases where the claims of a customer fall within G. L. c. 106, § 3-306(*d*), the last sentence of that section provides that "[t]he claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for.such party."  The bank's answer contained a counterclaim interpleading the customer, but the latter did not file an answer or otherwise join in the action.  We do not consider whether interpleader is available where, as here, the defendant bank has incurred an independent liability to the plaintiff.  See Reporter's Notes to Mass.R.Civ.P. 22, Mass. Ann. Laws, Rules of Civil Procedure, at 519 (1982).  See also Note, 73 Mich. L. Rev. at 434; Benson, *supra* at 460.