In re Edward J. TOONE, Debtor.

Bankruptcy No. 91–20593–WCH.

United States Bankruptcy Court,
D. Massachusetts.

April 29, 1992.

George R. Desmond, Framingham, Mass., for debtor.

Mark K. Temin, Foley, Hoag & Eliot, Boston, Mass. (John M. Dorsey, III, of counsel), F.D.I.C., Washington, D.C., for F.D.I.C.

## DECISION REGARDING DEBTOR'S CLAIM OF EXEMPTION OF ALLEGED RETIREMENT FUNDS

WILLIAM C. HILLMAN, Bankruptcy Judge.

The debtor claimed as exempt approximately $220,000 in funds being held in accounts in Bank of Boston in the name of "Edward J. Toone By David G. Toone Power of Attorney...." The exemption is claimed pursuant to Mass.G.L. c. 235, § 34A, and 29 U.S.C. § 1056(d). The Federal Deposit Insurance Corporation ("FDIC"), an unsecured creditor of the debtor in its capacity as receiver of First National Bank of Marlboro ("FNBM"), objected. The facts underlying the claim and objection are rather convoluted but not in dispute.

Debtor was president and chief executive officer of FNBM and, in that capacity, a participant in its pension and profit-sharing plans.

As a result of certain activities of the debtor during his tenure at the bank, FDIC brought suit against him and, on December 6, 1989, recovered a judgment in the amount of $48,000,000.

In that same month the debtor elected to take his accumulated benefits in a lump

sum,[1] and requested that the payments be paid to David Toone as his attorney.

Worcester County Institution for Savings ("WCIS") was administering the plans as agent of FDIC. It issued two cashier's checks payable to David Toone.

Before the WCIS checks could be presented for payment, FDIC commenced another action against the debtor, to reach and apply the proceeds of the cashier's checks against its prior judgment.[2] It obtained a temporary restraining order followed by a preliminary injunction.

Responding to requests of the debtor and his wife (who had intervened in the new FDIC action), FDIC permitted the checks to be presented and the funds deposited into an IRA and a non-IRA account with Bank of Boston in the name of David Toone as attorney for the debtor.

The order entered in the District Court to permit the agreement provided in part:

(a) that modification of the Preliminary Injunction as requested ... and the resulting transfer of the funds from their present status to their status as deposits in the Bank of Boston ... shall have no effect whatsoever on the claims, defenses or cross-claims in this action or the [District] Court's disposition thereof of (sic?) the validity *vel non* of FDIC's claims....

....

(c) that the [District] Court shall treat any legal and factual issues that may arise in the course of this action ... as if the funds retained their present legal and factual status prior to execution of this Stipulation

....

At the time of the execution of the stipulation and order on February 23, 1990, debtor admits that he claimed as his only defense the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d).[3] FDIC con-

tends, and debtor admits, that debtor "was not ... defending against FDIC's claim on the grounds that the funds were entitled to the protection from creditors provided by Mass.G.L. c. 235, § 34A, since such a defense was ruled out by the Stipulation and Order."[4] Debtor points out that the Massachusetts statute was not approved by the governor until June 20, 1990.

The Court agrees that it must look at the nature of the funds as they were prior to the approval of the stipulation, in accordance with provision (a) quoted above. It is more troubled by the effect of (b), which would appear to freeze the law of the case at February 23, 1990, which would rule out any benefit to debtor arising from Mass. G.L. c. 235, § 34A, but which would allow him to claim that the ERISA immunity extends to the roll-over period. Debtor appears to be making both arguments in his memorandum.

The first inquiry must be treated as subissues. The first consideration is whether, since the checks were never cashed, the funds still remain in the FNBM pension and profit-sharing accounts. If so, the funds "may not be reached by judicial process in aid of a third-party creditor," *Tenneco, Inc. v. First Virginia Bank*, 698 F.2d 688, 689 (4th Cir.1983), and may have some form of protection under the Bankruptcy Code.

Assuming the inquiry is answered in the negative, the next issue is whether the funds remained protected during the roll-over period.

## THE ISSUE OF THE UNCASHED CHECKS

Since the checks representing the withdrawals from the pension and profit-sharing accounts were not cashed at the mo-

---

**1.** His wife consented to this election as required by ERISA.

**2.** Mass.G.L. c. 214, § 3(6); F.R.C.P. 64, 65, and 69.

**3.** "Each pension plan shall provide that benefits provided under the plan may not be assigned or

alienated." 29 U.S.C. § 1056(d)(1). Also relevant are provisions of the Internal Revenue Code and regulations thereunder, 26 U.S.C. § 401(a)(13), Treas.Reg. § 1.401(a)(13)(b)(1).

**4.** FDIC Objection, § 5; Debtor's Response, § 5.

ment in issue, did the funds ever leave the shelter accorded to the funds?

Attention must first focus on *Barnhill v. Johnson,* 502 U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), decided just one month ago. In that case, the Supreme Court held that, for purposes of 11 U.S.C. § 547(b), a transfer made by check is deemed to occur on the date the check is honored. However, the case is readily distinguished. As the opinion notes, "For the purposes of payment *by ordinary check* ... a 'transfer' is defined by § 101(54) occurs on the date of honor, and not before." *Id.* at ——, 112 S.Ct. at 1390 (emphasis added). The checks in the present case were not ordinary, but cashier's checks.

The distinction is resolved by reference to state law,[5] the Uniform Commercial Code. *Id.* at ——, 112 S.Ct. at 1390.

As the Supreme Court noted, an ordinary check gives the recipient no recourse against the drawee. *Barnhill,* at ——, 112 S.Ct. at 1389. The opposite is true of a cashier's check.

■ A cashier's check is "a draft with respect to which the drawer and drawee are the same bank...." U.C.C. § 3–104(g). It is accepted upon issuance. *Pennsylvania v. Curtiss Nat'l Bank,* 427 F.2d 395 (5th Cir.1970). Once the cashier's check is issued, the bank cannot refuse to pay. *See* Mass.G.L. c. 106, § 4–303(1)(a); *Louis Falcigno Enterprises, Inc. v. Massachusetts Bank & Trust Co.,* 14 Mass.App. Ct. 92, 94, 436 N.E.2d 993 (1982).

■ The total liability of the bank, being wrapped in the cashier's check, must eliminate any liability of WCIS as plan administrator. Accordingly, the funds were no longer part of the ERISA-qualified plans and debtor cannot claim such protection as may be available under 29 U.S.C. § 1056(d) and related legislation.[6]

## THE ROLL–OVER PERIOD

Debtor next argues that, notwithstanding the withdrawal, the funds retained their character as protected benefits since the effective date of the stipulation was within the roll-over period. That is to say, at the time rights were fixed under the stipulation, debtor still had the option (absent the preliminary injunction) to roll-over the funds into certain types of savings vehicles and avoid immediate taxation.[7] He cites the following language from *Tenneco, Inc. v. First Virginia Bank, supra,* in support:

> The evidence discloses that Sweeney made a preretirement withdrawal and that he did not roll over the proceeds by investing them in another ERISA approved account within the 60–day period allowed for this purpose. The district court denied the relief which Sweeney requested, holding that although the funds originated in an ERISA account, they were not exempt from garnishment under the circumstances disclosed by this record. No provision of ERISA supports Sweeney's claim.

*Id.* at 691.

■ From this concept—that funds once protected are no longer protected after the 60–day period has expired—debtor argues that such funds *are* protected during that period, since an ERISA exemption may be "reclaimed" by an appropriate deposit. The Court disagrees.

■ Whatever the status of the funds may be during the roll-over period for purposes of taxation, the Court finds that they are no longer within the protection afforded by ERISA and the Internal Revenue Code. *In re Donaghy,* 11 B.R. 677 (Bankr. S.D.N.Y.1981), cited by debtor, actually involved a claim of exemption under 11 U.S.C. § 522(d)(10)(E). To the extent that any of the language in that decision is

---

5. The Supreme Court makes clear that *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) remains alive and well under the Bankruptcy Code. 502 U.S. at ——, 112 S.Ct. at 1389.

6. *See* Agin, *Protecting Pension Plans and Individual Retirement Accounts in Bankruptcy,* 35 Boston B.J. 10 (July/August 1991).

7. No purpose would be served in detailing the tax law authorities for this proposition.

supportive of debtor's position, the Court declines to follow it.

## CONCLUSION

Having concluded that the funds in question were not protected funds at the time of the stipulation, when debtor agreed that rights would be fixed, it becomes unnecessary to discuss the issues arising under Mass.G.L. c. 235, § 34A. The objection of the FDIC to the claim of exemption is sustained. An appropriate order will be entered.