**COMMUNITY BANK HENDERSON,**
Respondent,

v.

**Steven C. NOBLE, Appellant.**

**No. CO–95–2528.**

Court of Appeals of Minnesota.

July 23, 1996.

**38**

Dan K. Prochnow, Bradford & Prochnow, Ltd., Hutchinson, for Respondent.

Richard W. Greeman, Minneapolis, for Appellant.

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

Before NORTON, P.J., and PETERSON and STONE \*, JJ.

## OPINION

PETERSON, Judge.

Appellant Steven C. Noble challenges the district court's ruling permitting Community Bank Henderson (Bank) to attach Noble's interest in the Bank's Employee Stock Ownership Plan (ESOP or Plan). We affirm.

## FACTS

Noble pleaded guilty to embezzling funds from the Bank while he was an employee and was ordered to pay restitution. When Noble later requested disbursement of his interest in the Bank's ESOP plan, the Bank brought an ex parte petition for preliminary attachment of Noble's benefits pursuant to Minn. Stat. §§ 570.01-.14 (1994). The district court granted the Bank's petition.

The Bank then issued a cashier's check to Noble in the amount of $15,972.42, his vested interest less income tax withholding. Delivery of the check to Noble's attorney was attempted. A deputy sheriff was present at the attempted delivery. For reasons not clear in the record, Noble's attorney never accepted delivery of the check. Nevertheless, the sheriff seized the check that day and preliminarily attached it pursuant to the district court's order.

After a hearing, the district court concluded that the preliminary attachment was proper. Noble appeals.

## ISSUES

1. Does federal law preempt Minn.Stat. § 550.37, subd. 24(2) (1994)?

2. If Minn.Stat. § 550.37, subd. 24(2) is preempted by federal law, are the funds exempt from attachment under federal law?

3. Does the Plan preclude attachment of the funds on behalf of the Bank?

pointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

■ Where material facts are not in dispute, this court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

1. Noble argues that Minn.Stat. § 550.37 (1994), prohibits the attachment of benefits distributed to him under the Bank's ESOP. The Bank argues that section 550.37 is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1453 (1994).

Minn.Stat. § 550.37, subd. 1, provides that "property mentioned in this section is not liable to attachment [or] garnishment." Minn.Stat. § 550.37, subd. 24 lists as property not subject to attachment:

The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, * * * simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service:

\* \* \* \* \* \*

(2) to the extent of the debtor's aggregate interest under all plans and contracts up to a present value of $30,000 and additional amounts under all the plans and contracts to the extent reasonably necessary for the support of the debtor and any spouse or dependent of the debtor.

■ ERISA, however, supersedes "all State laws insofar as they may now or hereafter relate to any [qualified] employee benefit plan." 29 U.S.C. § 1144(a) (1994). The words "relate to" should be construed broadly. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987).

A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.

*Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

■ Minn.Stat. § 550.37, subd. 24, "relates to" employee benefit plans. It expressly refers to such plans in describing the types of funds that are exempt from attachment. Unless one of ERISA's narrow exceptions to preemption applies, an express reference to employee benefit plans results in preemption by ERISA. *Shaw*, 463 U.S. at 96–100, 103 S.Ct. at 2899–2902. Appellant does not argue that an exception to preemption applies.

■ Appellant argues that *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335 (Minn.1995), concluded that all retirement plans and contracts are governed by Minn. Stat. § 550.37, subd. 24(2), rather than by ERISA, if the benefits are less than $30,000. Appellant's argument is based on language in *Blume* which states, "[b]y its terms clause (2) governs all plans and contracts." 529 N.W.2d at 339. The court subsequently limited that statement by explaining:

Our holding today means that plans governed by ERISA will continue to be entirely exempt, whereas plans not covered by ERISA, like an IRA, will only be exempt up to an indexed $30,000, plus an amount reasonably necessary for the support of the debtor and the debtor's spouse or dependents.

*Blume*, 529 N.W.2d at 339.

Contrary to appellant's claim, *Blume* does not stand for the proposition that when a debtor has funds of less than $30,000 in an ERISA-qualified plan, the exemption is governed by Minn.Stat. § 550.37, subd. 24(2). As the *Blume* court indicated, exemption of funds from plans covered by ERISA will be determined in accordance with ERISA.

■ 2. ERISA requires that "benefits provided under [an ERISA-qualified] plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (1994). ERISA is "intended in significant part to ensure pension benefits will actually be received upon retirement by plan participants and beneficiaries." *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1081–82 (10th Cir. 1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). The ultimate issue in this case is whether the funds deposited in the Plan on Noble's behalf remain exempt under ERISA after the funds are disbursed from the Plan. A number of feder-

al courts have concluded that disbursed funds lose the protection of ERISA.

In *Guidry*, the Tenth Circuit concluded that ERISA "protects ERISA-qualified pension benefits from garnishment only until paid to and received by plan participants or beneficiaries." 39 F.3d at 1083. The Third Circuit applied this reasoning to funds disbursed as a lump sum prior to retirement. *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52, 55 (3d Cir.1994). The Fourth Circuit adopted the rule that

> [w]here an employee elects to draw on her ERISA plan prior to her retirement, she forfeits the protection provided by the Act.

*United States v. Smith*, 47 F.3d 681, 683 (4th Cir.1995). Even this limited exception to the anti-alienation provision allows attachment in the case at hand because Noble withdrew his funds prior to retirement.

In *In re Toone*, 140 B.R. 605 (Bkrtcy. D.Mass.1992), the United States Bankruptcy Court for the district of Massachusetts addressed an issue nearly identical to the one before this court. In that case, a debtor requested disbursement of funds from his pension and profit-sharing plans. *Id.* at 605–06. The administrator of the plans issued two cashier's checks payable to the debtor's attorney. *Id.* at 606. Before the checks were presented for payment, a judgment creditor commenced an action to attach the funds and obtained a temporary restraining order. *Id.* The debtor's only defense was the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d). *Id.*

The court addressed the issue of whether the funds remained in the plan accounts because the cashier's checks were never cashed. *Id.* at 606–07. The court concluded that the funds were no longer part of the pension and profit-sharing plans, because "[o]nce the cashier's check is issued, the bank cannot refuse to pay." *Id.* at 607. The court then concluded that, because the funds were no longer part of the plan, they were not protected by ERISA's anti-alienation provision. *Id.*

In this case, despite the fact that Noble's attorney never cashed the cashier's check,

the funds were disbursed from the plan account by virtue of the cashier's check having been drawn. Once the funds were disbursed, they were no longer protected by ERISA's anti-alienation provision and were subject to attachment.

Noble argues that pursuant to Minn.Stat. § 550.37, subd. 20 (1994), the funds remained exempt from attachment after they were withdrawn from the Plan. This argument, however, is based on the assumption that, while in the Plan, the funds were exempt from attachment pursuant to Minn.Stat. § 550.37, subd. 24. Minn.Stat. § 550.37, subd. 20, provides:

> The exemption of funds from creditors' claims, provided by subdivision[ ] ... 24, shall not be affected by the subsequent deposit of the funds in a bank or any other financial institution, whether in a single or joint account, if the funds are traceable to their exempt source.

Subdivision 20 does no more than continue an exemption provided by subdivision 24. But subdivision 24 is preempted by ERISA and did not provide an exemption while the funds were in the Plan. Therefore, there was no exemption provided by subdivision 24 to be continued by subdivision 20.

■ 3. Noble also argues that the Plan itself precludes the bank from attaching his benefits after the funds have been distributed. Paragraph 4.7 of the Plan provides:

> [P]rincipal or income of this Trust shall not be paid or revert to the Employer or be used for any purpose whatsoever other than the exclusive benefit of the Participants or their Beneficiaries.

Noble claims that a prohibited reversion of funds occurred when the bank attached the cashier's check.

Paragraph 4.7 precludes reversion to the bank of principal or income "of this Trust." Funds that have been disbursed from an ERISA-qualified plan are no longer principal or income of the trust. Because the issuance of the cashier's check removed Noble's benefits from the trust, paragraph 4.7 of the Plan does not preclude attachment.

■ In his reply brief, Noble challenges for the first time the attempted delivery of

the cashier's check. He argues that there was in fact no delivery, and therefore, there was no disbursement of funds. We decline to consider this issue because "[t]he reply brief must be confined to new matter raised in the brief of the respondent." Minn. R. Civ.App. P. 128.02, subd. 3. Appellant may not raise new issues in the reply brief. *Reserve Life Ins. Co. v. Commissioner of Commerce*, 402 N.W.2d 631, 634 (Minn.App.1987), *review denied* (Minn. May 20, 1987).

## DECISION

ERISA preempts Minn.Stat. § 550.37, subd. 24(2), with respect to Noble's interest in the Bank's Employee Stock Ownership Plan. Funds are disbursed from an Employee Stock Ownership Plan upon the issuance of a cashier's check, and, under ERISA, those funds are subject to attachment.

**Affirmed.**