In re Corbin J. LACINA and Laura J. Lacina, Debtors.

Patti J. Sullivan, Trustee, Plaintiff,

v.

Lois K. Gergen, Defendant.

Bankruptcy No. 10–30372.
Adversary No. 10–3224.

United States Bankruptcy Court,
D. Minnesota.

June 16, 2011.

Randall K. Strand, Roseville, MN, for Debtors.

## ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the trustee-plaintiff's motion for summary judgment on her complaint to avoid and recover the debtors' transfer of $26,606.33 into the defendant's bank account as a fraudulent transfer pursuant to 11 U.S.C. §§ 548 and 550. Cynthia Hegarty appeared on behalf of the plaintiff, the Chapter 7 Trustee, Patti J. Sullivan. Randall Strand appeared on behalf of the defendant, Lois K. Gergen. At the conclusion of the hearing, the Court took the matter under advisement. Being now fully advised, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FACTUAL BACKGROUND

The defendant contends that there are contested facts with respect to fraudulent intent. However, the facts material to the transfer in question and essential to the determination are not reasonably in dispute and summary disposition is appropriate.

On or about April 27, 2009, the debtor Corbin Lacina received a $26,606.33 annual annuity payment from the NFL Player Annuity Program. On May 4, 2009, he and his wife, debtor Laura Lacina, caused his annuity check to be deposited into a Wells Fargo bank account held solely by the defendant, Laura's mother, Lois K. Gergen. The Lacinas have declared inconsistent explanations regarding the reasons for the transfer.[1] Neither Corbin nor Laura was a signatory on the account; however, they retained access to the transferred funds in Gergen's account, through Gergen's voluntary compliance with their wishes, and used the funds for their own personal expenses. The Lacinas filed a Chapter 7 bankruptcy petition on January 21, 2010.

The transfer of funds was a transfer of an interest in property of the Lacina's

---

**1.** At the meeting of creditors, Corbin testified that the funds were deposited into Gergen's bank account because he did not have a bank account for deposits at the time and because it was for Laura and her mother to start a new business together. Laura also testified that the funds were put into Gergen's account to help to start up her company, L & L Stationery. Later, both Corbin and Laura recanted their prior testimony and claimed that the funds, although put into Gergen's account, were for their own personal expenses, and that actually Corbin did have a deposit account at the time at Wachovia in Florida.

made within one year before they filed under Chapter 7. At the time of the transfer, the Lacinas had several judgments recently entered against them in excess of $1,000,000.[2]

The trustee requests summary judgment against Lois K. Gergen, as the initial transferee of the debtors' transfer of funds of $26,606.33, as an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A), and entitled to recovery under § 550. The defendant contends that the available factual record does not support a conclusion of fraudulent intent, and that in any event Gergen was a mere conduit and not an actual transferee of the funds, and is therefore excepted from avoidance and recovery.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *See In re Patch*, 526 F.3d 1176, 1180 (8th Cir.2008), citing Fed. R.Civ.P. 56(c), *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Patch*, 526 F.3d at 1180, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

While the record must be viewed "in the light most favorable to the nonmoving party and . . . that party [afforded] all reasonable inferences, *see id.* at 587, 106 S.Ct. 1348 [89 L.Ed.2d 538], the nonmoving par-

ty's production of a mere 'scintilla of evidence' in support of his position is insufficient to avoid summary judgment." *Patch*, 526 F.3d at 1180, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (explaining that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

"To avoid summary judgment in favor of the plaintiff, the defendant must produce significant, probative, and substantial evidence that denies the existence of one or more elements of the plaintiff's cause of action, or that constitute the basis for a recognized affirmative defense." *See Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). "Only if the defendant produces evidence that is 'significant' and 'probative,' [ ], as well as 'substantial' on one or more of these elements will it have made out a genuine issue of material fact." *Id.*, citing *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987). "In short, to resist a motion for summary judgment, the defendant must demonstrate that it will be able to get enough evidence into the record at trial before the finder of fact, to support findings on an element as to which it has a burden of proof." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

## III. DISCUSSION

Section 548 provides, in relevant part:

(a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two years before

---

**2.** Corbin had judgments against him in favor of Travelers Casualty & Surety Company, Tamarack Village Shopping Center, LP, Highland Bank and Boulay, Heutmaker, Zibell & Co, PLLP, which collectively exceeded $577,000. Judgments against Laura in favor of Tamarack Village Shopping Center, LP, Highland Bank and Boulay, Heutmaker, Zibell & Co, PLLP, collectively exceeded $537,000.

the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date of such transfer was made or such obligation was incurred, indebted . . .

*See* 11 U.S.C. § 548 (2005).

■■■■ "The Eighth Circuit has recognized that direct evidence of such intent is rarely forthcoming, so the trial court may make an inference on the issue 'from the circumstances surrounding the transfer.'" *See In re Northgate Computer Systems, Inc.,* 240 B.R. 328, 360 (Bankr.D.Minn. 1999), citing *In re Sherman,* 67 F.3d 1348, 1353 (8th Cir.1995). "The courts recognize that certain sorts of events, conditions, or characteristics frequently accompany the execution of a scheme to defraud third-party creditors." *Northgate,* 240 B.R. at 360. "The presence of several or more of these 'badges of fraud' gives rise to a presumption of fraudulent intent." *Northgate,* 240 B.R. at 360, citing *Kelly v. Armstrong,* 141 F.3d 799, 802 (8th Cir. 1998); *In re Bateman,* 646 F.2d 1220, 1223 (8th Cir.1981); *In re Sherman,* 67 F.3d at 1353–1354 (presence of several badges of fraud "can constitute conclusive evidence" of the proscribed intent).

■■■■ "If the trustee makes out the basis for such a presumption, the burden shifts to the transferee—which must prove 'some legitimate supervening purpose for the transfers at issue.'" *Northgate,* 240 B.R. at 360, citing *Kelly v. Armstrong,* 141 F.3d at 802. "This a heavy burden: The burden which shifts . . . is not a burden of going forward with the evidence requiring the [debtor] to explain away nature inferences, but a burden of proving that he has not committed the objectionable acts with which he has been charged." *Id.*

■■■■ "Among the badges of fraud that the trial court may consider in passing on the issue of intent are:

1. the transfer or obligation was to an insider;

2. the debtor retained possession or control of the property transferred after the transfer;

3. the transfer or obligation was disclosed or concealed;

4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5. the transfer was of substantially all the debtor's assets;

6. the debtor absconded;

7. the debtor removed or concealed assets;

8. the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor was transferred the assets to an insider of the debtor."

*See Northgate,* 240 B.R. at 361, n. 45, citing *In re Sherman,* 67 F.3d at 1353; *Kelly v. Armstrong,* 141 F.3d at 802. "These badges are the same under the Minnesota enactment of the Uniform Fraudulent Transfer Act." *Northgate,* 240 B.R. at 361, citing Minn.Stat. § 513.44(b).

■■■■ In this case, the trustee has established, because the record conclusively supports, a compelling presumption of the

requisite fraudulent intent, and neither the debtors nor the defendant have offered a plausible, legitimate or credible explanation for the transfers that could reasonably overcome the presumption.

The funds transferred were an interest of the debtors in property, having originated from Corbin's NFL Player Annuity Program and constituting an annual installment payment he would receive from the annuity. The transfer of funds into Gergen's bank account occurred on May 4, 2009, less than one year before the date of the filing of the bankruptcy petition.

Gergen is an insider transferee because she is Laura's mother and Corbin's mother-in-law. *See* 11 U.S.C. § 101(31) (insider includes a relative of the debtor). The Lacinas retained control of the funds transferred into Gergen's bank account (through Gergen, by her legal authority). The transfer was concealed because the funds were diverted into Gergen's account and the Lacinas continued to access the funds for their own benefit, and the transfer was not disclosed in the Statement of Financial Affairs.

Within months prior to the transfer, the Lacinas incurred judgment debts in the approximate amount of $1,114,000.00. Depositing the annuity payment directly into Gergen's account effectively shielded the funds from judgment creditors. Gergen gave no consideration in exchange for the annuity funds. The Lacinas were insolvent at or around the time of the transfer.[3] *See* 11 U.S.C. § 101(32)(A) (insolvent is a financial condition such that the sum of the debts is greater than all of the property, at fair value, exclusive of the property transferred, and property that may be exempt). Once the funds were distributed from the NFL Player Annuity Program, an ERISA qualified plan, the funds became nonexempt funds. *See Community Bank Henderson v. Noble*, 552 N.W.2d 37, 40 (Minn.Ct.App.1996). The Lacinas avoided garnishment of those funds by judgment creditors by hiding the funds with an insider.

The elements required under § 548 are demonstrated here and indisputable. The defendant's and the debtors' original and present assertions to the contrary are controverted by the established record, inconsistent, unsupported, and specious.

Section 550 provides, in relevant part:

§ 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

*See* 11 U.S.C. § 550 (1994).

"Section 550 determines from whom the trustee may recover property whose trans-

---

**3.** Schedules A and D reflect that the Lacinas' home and cabin were over encumbered at the time of filing several months following the annuity payment transfer. Schedules B and C reflect zero nonexempt assets. Schedule F reflects total unsecured debt in the amount of $1,352,757.90.

fer has been avoided pursuant to § 548." *See In re Sherman*, 67 F.3d 1348, 1356 (8th Cir.1995). "Section 550(a) allows the trustee to recover property from the initial transferee, or any immediate or mediate transferee of the initial transferee." *Id.* "Section 550(b), however, prevents the trustee from recovering an avoided transfer from an immediate transferee who takes for value, in good faith and without knowledge of the voidability of the transfer avoided." *Id.*

■ "As a general rule, § 550(a) imposes liability on all recipients in a chain of transfers of fraudulently-conveyed property." *See In re Whaley*, 229 B.R. 767, 773 (Bankr.D.Minn.1999), citing *In re Sherman*, 67 F.3d 1348, 1356 (8th Cir.1995). "An initial transferee from the debtor is strictly liable." *Whaley*, 229 B.R. at 773, citing *In re Bullion Reserve of North Am.*, 922 F.2d 544, 547 (9th Cir.1991); *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 895 (7th Cir.1988); *In re Moskowitz*, 85 B.R. 8, 10 (E.D.N.Y.1988); *In re Blinder, Robinson & Co., Inc.*, 162 B.R. 555, 562 (D.Colo. 1994); *In re Dominion Corp.*, 199 B.R. 410, 413 (9th Cir. BAP 1996).

■ "[U]nder § 550(b), a mediate or immediate transferee receives protection if it has taken for value in good faith without knowledge of the voidability of the transfer." *See In re Circuit Alliance, Inc.*, 228 B.R. 225, 231–232 (Bankr.D.Minn.1998). "However, an initial transferee receives no such protection." *Id.*, citing *In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712, 721 (6th Cir.1992); *Sherman*, 67 F.3d at 1356. "Thus, the initial transferee of an avoided transfer is strictly liable to the estate, whether it colluded with the debtor or was an innocent and unwitting recipient." *Circuit Alliance*, 228 B.R. at 232,

citing *Bullion Reserve*, 922 F.2d at 547; *Bonded Fin'l Serv.*, 838 F.2d at 895; *Moskowitz*, 85 B.R. at 10; *Dominion*, 199 B.R. at 413.

■ "Mediate or immediate transferees in the chain out from the initial transferee may avoid liability by proving something akin to bona fide purchaser status." *Whaley*, 229 B.R. at 773, citing *In re Coutee*, 984 F.2d 138, 140 n. 2 (5th Cir.1993); *In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712, 722 (6th Cir.1992); *In re C–L Cartage Co., Inc.*, 899 F.2d 1490, 1495 (6th Cir.1990); *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1201 (11th Cir.1988); *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d at 896 n. 3; *In re Presidential Corp.*, 180 B.R. 233, 236 (9th Cir. BAP 1995); *In re Circuit Alliance, Inc.*, 228 B.R. 225, 231–32 (Bankr. D.Minn.1998).

■ "Section 550(b) affords an affirmative defense." *Whaley*, 229 B.R. at 776. "As the proponent of the defense, the Defendant ha[s] the burden to produce evidence to satisfy all of its elements." *Id.*, citing *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 892 (7th Cir.1988); *In re Food & Fibre Protection, Ltd.*, 168 B.R. 408, 422 (Bankr. D.Ariz.1994).

■ "[T]o be an initial transferee, a party must have dominion and control over the transferred funds." *See In re Bauer*, 318 B.R. 697, 700 (Bankr.D.Minn., 2005), citing *Luker v. Reeves (In re Reeves)*, 65 F.3d 670, 676 (8th Cir.1995), citing *In re First Sec. Mtg. Co.*, 33 F.3d 42 (10th Cir. 1994); *Coutee*, 984 F.2d at 140–41. "It is not the simple possession of funds, coupled with a one-time act of directing them on to a further transferee, that makes out the 'dominion and control' of Bonded Financial Services." *Bauer*, 318 B.R. at 700, citing *Circuit Alliance*, 228 B.R. at 232. "Rather, it is an unfettered legal right to use the funds for the possessor's own purposes

and benefit." *Id.* at 701. "Thus, an entity that is in possession of transferred funds as a 'mere conduit' between other parties in a transactional chain is not a 'transferee' within the scope of § 550(a)." *Id.*, citing *Circuit Alliance*, 228 B.R. at 232–33.

■ In this case, Gergen is the initial transferee of the $26,606.33 and is therefore strictly liable to the bankruptcy estate under § 550(a)(1). The funds in question followed a clear path from the debtor Corbin Lacina's NFL Player Annuity Program into Gergen's individual bank account over which she had sole ownership and dominion.

The claim that Gergen constituted a "mere conduit" of the funds because the funds ultimately flowed (back) to the debtors is misguided. In a directly analogous case, *In re Hurtado*, 342 F.3d 528 (6th Cir.2003), the married Hurtado debtors fell into financial misfortune, incurred significant debt, and caused funds to which they were entitled to be deposited into an account exclusively held and controlled by the mother of one of the debtors. The mother argued that she was no more than agent for the debtors because she lacked actual dominion over the funds transferred, and that therefore she was not truly an initial transferee and merely a conduit.[4]

The Court concluded otherwise:

"We reject Hurtado's argument, finding her to be unlike the alleged initial transferees in *Baker & Getty* and *Bonded.* The results in *Baker & Getty* and *Bonded* turned on the distinction between mere possession and ownership. The parties found not to be initial transferees in both cases never had legal title to the funds; they merely possessed the funds and were acting as agents for the principals, who retained legal right to the funds. These cases stand for the proposition that a party is not to be considered an initial transferee if it is merely an agent who has no legal authority to stop the principal from doing what he or she likes with the funds at issue."
*In re Hurtado*, 342 F.3d at 534–535 (citations omitted).

As in *Hurtado*, in this case Gergen was freely given the funds, effectively eliminating the payment as an asset of the debtors, and she had actual and complete dominion over the funds. Gergen "had legal authority to do what she liked with the funds; she could have invested the funds in 'lottery tickets or uranium stocks.'" *Hurtado*, 342 F.3d at 535, citing *Bonded,* 838 F.2d at 894; *In re Blatstein,* 260 B.R. 698, 717–718 (E.D.Pa.2001) (initial transferee dominion and control test is purely concerned with rights; whether or not transferee may or may not have exercised control over the transferred funds is irrelevant).

Accordingly, the trustee is entitled to avoid the transfer and recover the transferred funds from Gergen, the initial transferee.

## IV. DISPOSITION

IT IS HEREBY ORDERED:

1. Pursuant to 11 U.S.C. § 548(a)(1)(A), the plaintiff, Trustee Patti J. Sullivan,

---

**4.** "These two arguments, however, are merely different sides of the same coin, as entities will be considered 'mere conduits' if and only if they lack dominion and control over the relevant funds." *Hurtado*, 342 F.3d at 534 n. 2, citing *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir.1997) (adopting the "'mere conduit' test for determining who is an initial transferee"), cert. denied, 524 U.S. 912, 118 S.Ct. 2295, 141 L.Ed.2d 154 (1998); *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir.2002) (Financial conduits are those entities that do not exercise 'dominion and control' over the funds).

is entitled to avoid the debtors' transfer of funds to the defendant, Lois K. Gergen;

2. Pursuant to 11 U.S.C. § 550, the Trustee may recover the amount transferred, $26,606.33, from Lois K. Gergen, the initial transferee; and

3. Judgment shall be entered in favor of the Trustee and against Lois K. Gergen in the amount of $26,606.33.

LET JUDGMENT BE ENTERED ACCORDINGLY.